The STATE ex rel. EDWARDS

v.

The STATE of Ohio et al.

[Cite as *State ex rel. Edwards v. State* (1998), 128 Ohio App.3d 109.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 97APD10–1297.

Decided June 2, 1998.

*Keith Edwards, pro se.*

*Betty D. Montgomery*, Attorney General, and *C. Matthew Cooper*, Assistant Attorney General, for respondents.

LAZARUS, Judge.

Relator, Keith Edwards, has brought this original action in mandamus seeking additional compensation, back pay, good-time credit, and other prospec-

tive relief associated with his work as an inmate at Trumbull Correctional Institution ("TCI"). In order to obtain a writ of mandamus, the relator must establish that he has a clear legal right to the relief requested, the respondent has a clear legal duty to grant it, and no adequate remedy at law exists to vindicate the claimed right. *State ex rel. Hattie v. Goldhardt* (1994), 69 Ohio St.3d 123, 125, 630 N.E.2d 696, 697–698. Because relator has failed to establish that he has a clear legal right to the relief requested, his request for a writ is denied.

Relator is an inmate at TCI. Respondents are a variety of agents and employees of the state of Ohio, including the Director of the Ohio Department of Rehabilitation and Correction, the Warden of TCI, and the Director of Ohio Penal Industries ("OPI"). Starting in April 1994, relator worked through assignment of OPI in various private business shops as a "line leader" and was paid at a "pay grade # 1" level. From July 29, 1995 through June 2, 1996, relator was prohibited from working because he had been issued a conduct report for rules infractions and was placed in a segregation cell. Relator's conduct report was eventually reversed and expunged from his record. When he returned to work, however, relator was assigned a position at a lower, "pay grade # 2" level. Relator's prior position of line leader, and its associated pay grade # 1 level, had been eliminated at TCI for various security and administrative reasons.

In his first claim for relief, relator seeks back pay and additional compensation under the administrative regulations governing inmate labor designated as "private employment," in particular, Ohio Adm.Code 5120–3–04, 5120–3–08, and 5120–3–09. While relator concedes that he has always been assigned to an OPI work program, relator claims, under the authority of *State ex rel. Wiggins v. Barnes* (1991), 57 Ohio St.3d 45, 565 N.E.2d 598, that he should be treated as a "private employee" because he satisfies the common-law test of a master-servant relationship, *i.e.*, his employer retained the right to control the mode and manner of his work and furnished all necessary materials, tools, equipment, and supplies. In essence, relator contends that inmates should be compensated as though they are private employees whenever a private entity retains the right to control the mode and manner of the inmate's work and supplies all necessary materials, tools, equipment, and supplies. Relator's position, however, is inconsistent with the current regulations governing inmate labor.

The regulations clearly provide that inmates who are assigned work through OPI are not private employees and are not to be compensated as such. Under the Administrative Code, inmate labor is divided into three, mutually exclusive categories: (1) "private employment," (2) "OPI assignment," and (3) "work program assignment." Ohio Adm.Code 5120–3–02(B). Inmates under OPI assignment are compensated under the provisions of Ohio Adm.Code 5120–3–05.

See Ohio Adm.Code 5120–3–02(C); 5120–3–09(B). Inmates who are assigned to non-OPI programs (*i.e.*, private employment and/or work program assignments) are compensated under the general provisions of Ohio Adm.Code 5120–3–08. Furthermore, compensation earned by inmates assigned to "private employment" is subject to certain distribution rules of Ohio Adm.Code 5120–3–09.

Here, relator concedes that he worked pursuant to an OPI assignment, and, as a result, his compensation is governed by the regulations specifically related thereto. Under Ohio Adm.Code 5120–3–02(A)(3), OPI assignments include any inmate labor performed (1) under the supervision of OPI employees, (2) in shops equipped by OPI, or (3) pursuant to any written or unwritten agreement of OPI and any governmental agency or private person or business entity. See *Ridenour v. Ohio Penal Industries* (Mar. 28, 1995), unreported, 1995 WL 141037, Franklin App. No. 94API10–1529. OPI is specifically authorized to enter into contracts to provide services to any private person or business entity and is authorized to satisfy such contracts through inmate labor. Ohio Adm.Code 5120–3–02(C). Furthermore, Ohio Adm.Code 5120–3–02(C) clearly states that inmates assigned to provide such services shall not be considered employees of the purchaser or OPI and that OPI-assigned inmates shall be compensated pursuant to Ohio Adm.Code 5120–3–05.

Given the clear and specific language of these regulations, relator's argument that he should be treated as a private employee is untenable. The regulations specifically authorize OPI to enter into contracts with private entities to provide inmate labor and further state that such inmates are not to be considered employees of either OPI or the private entity. Moreover, the definition of an "OPI assignment" is not limited to inmate labor supervised by OPI employees. Rather, it includes any inmate labor performed pursuant to an agreement between OPI and a private business entity. As such, the regulations concerning OPI assignment clearly contemplate the type of arrangement involved here, *i.e.*, one in which private entities supervise the mode and method of day-to-day work of the inmate and supply all relevant materials.

Relator's reliance on *Wiggins, supra,* and the common-law rules concerning the creation of the master-servant relationship are similarly misplaced. In *Wiggins,* the Ohio Supreme Court interpreted a prior version of the Administrative Code, in which inmates were compensated differently depending on whether the work was performed under a "governmental contract" or a "private-person contract." See *Wiggins, supra,* 57 Ohio St.3d at 46, 565 N.E.2d at 599–600. The court ruled that the relators were entitled to the greater compensation afforded under a private-person contract, in part because the state conceded that, like here, the work had been done for a private entity. The regulations interpreted by *Wiggins,* however, no longer exist. See *Ridenour, supra.* As discussed above,

compensation for inmate labor is now based upon three mutually exclusive categories and not on the governmental/private-person contract distinction. In short, *Wiggins* and its application of common-law notions of the master-servant relationship are not relevant here. As a result, relator has failed to establish that he has a clear legal right to be compensated as a private employee.

■ In his second claim for relief, relator seeks back pay, back "good time" credit, and back personal and sick leave for the approximate ten months that he was not able to work because of the erroneous rules infraction report. In particular, relator contends that he is entitled to such relief because he was effectively "wrongly discharged" during this period and that by refusing to grant him such relief, respondents have treated him differently than other inmates. We disagree.

The regulations governing OPI assignment compensation specifically provide that inmates do not earn compensation, good-time credit, personal and sick leave, except when the inmate actually performs work associated with his assignment. See Ohio Adm.Code 5120–3–05(A) ("[I]nmates assigned to OPI will receive compensation only for hours actually scheduled and worked unless leave time is available and approved to make up for scheduled hours missed."); Ohio Adm. Code 5120–3–05(C) ("Inmates participating in OPI programs will be compensated only for scheduled hours actually worked * * *."); Ohio Adm.Code 5120–3–05(D)(1) (establishing amount of personal leave earned depending on whether inmate works more or less than five hours a day); R.C. 2967.193(A) (good-time credit is earned only when an inmate "productively participates" in work assignment); Ohio Adm.Code 5120–2–06(A) (same). Significantly, the regulations also make clear that inmates assigned to OPI are not to be "considered 'employees' for any purpose." Ohio Adm.Code 5120–3–05(A). Given these provisions, any effort by relator to obtain relief under an employment theory of recovery (*i.e.*, wrongful discharge) is simply untenable.

■ Similarly, we find relator's claim of discriminatory treatment to be unfounded. In support of his allegation, relator relies on two pieces of evidence. The first piece of evidence is a decision of the chief inspector on a grievance appeal by another TCI inmate. In this decision, a negotiated agreement for back pay is referenced. However, the factual basis underlying this vague reference is unclear and its similarity or relevance to relator's claim for back pay is not evident. Relator's second piece of evidence is an April 1, 1993 memorandum from a Department of Rehabilitation and Correction law clerk and staff attorney to all wardens. While this memorandum does state that "some institutions" were providing OPI assigned inmates with "lost wages" when rules infractions were reversed, the memorandum concludes that such actions were inappropriate under Ohio Adm.Code 5120–3–05(D) and admonishes the institutions to correctly apply

the regulation. As such, this document does not, as relator claims, establish that it was ever the respondents' policy to grant back pay, let alone that it was the policy at TCI during the time of relator's participation in the program. As a result, we find that relator has failed to provide credible evidence sufficient to show that respondents have treated relator any differently from any other similarly situated inmate in failing to give him back pay. For the foregoing reasons, relator has failed to show that he has a clear legal right to the back pay and other requested relief in his second claim.

In his third claim for relief, relator contends that he was improperly demoted from pay grade # 1 to a pay grade # 2 upon his reinstatement to the OPI program and seeks past and future compensation accordingly. In particular, relator argues that his demotion was improper because it was not approved by the work programs assignments committee ("WPAC") as required by Ohio Adm.Code 5120–3–06(F) and because the decision to eliminate the pay grade # 1 positions at TCI violated the requirement of Ohio Adm.Code 5120–3–05(B) that pay grades be the same for all institutions and security levels. Again, we disagree and find that relator's contentions are not supported by the relevant administrative regulations.

First, relator's reliance on Ohio Adm.Code 5120–3–06 is misplaced because this regulation does not apply to OPI-assigned inmates, like relator. As stated by its title, Ohio Adm.Code 5120–3–06 governs "[w]ork program assignments for inmates." Pursuant to Ohio Adm.Code 5120–3–06(B), WPAC shall make all "work program assignments" and, pursuant to Ohio Adm.Code 5120–3–06(F), WPAC shall consider and decide all proposed promotions, demotions, transfers, and probationary removals of inmates regarding their "work program assignments." However, as discussed above, inmate labor is divided into three, exclusive categories: (1) "private employment," (2) "OPI assignment," and (3) "work program assignment." Ohio Adm.Code 5120–3–02(B). Relator is not involved in a work program assignment; rather, he is involved in an OPI assignment. As such, Ohio Adm.Code 5120–3–06 and its provisions relating to the supervision of WPAC over "work program assignments" do not apply to relator.

Second, the decision to eliminate pay grade # 1 positions at TCI does not violate the provisions of Ohio Adm.Code 5120–3–05(B). Ohio Adm.Code 5120–3–05(B), entitled "Job assignment grade level and pay schedule," provides that each inmate assigned to OPI will be assigned to an inmate pay grade "based upon the nature of the work performed, the experience and skill level of the inmate, and any other appropriate factor." The regulation further provides that "pay grades, qualifications for each grade, and the base hourly compensation rate, which will be the same for all institutions and security levels," shall be set by the Director of

OPI with the approval of the Director of the Department of Rehabilitation and Correction.

■ Relator mistakenly contends that TCI's unilateral action to eliminate pay grade # 1 positions violated the regulation's requirement that all pay grades be the "same for all institutions and security levels." While the regulation does require that the pay grades, job descriptions, and compensation for each pay grade must be the same at each institution, the regulation does not require that each institution offer positions to its inmates in each pay grade. Nor does the regulation require that any particular inmate, including relator, be assigned to any particular pay grade position. As a result, relator has failed to establish that he is entitled to relief under Ohio Adm.Code 5120–3–05(B). Relator has failed to show that he has a clear legal right to the relief requested in his third claim for relief.

For the foregoing reasons, we deny relator's request for a writ of mandamus. In so doing, we also deny relator's pending "Motion For Order of Mandatory Discovery for Summary Judgment Order and/or in the Alternative to Decide Damages Upon Such Ruling." This motion, seeking discovery in support of relator's *respondeat superior* theory of recovery and seeking information as to the amount allegedly owed relator in back pay is rendered moot given our disposition of relator's claims.

*Writ denied.*

BOWMAN and JOHN C. YOUNG, JJ., concur.